(Slip Opinion) OCTOBER TERM, 2014 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WARGER *v.* SHAUERS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 13–517. Argued October 8, 2014—Decided December 9, 2014

Petitioner Gregory Warger sued respondent Randy Shauers in federal court for negligence for injuries suffered in a motor vehicle accident. After the jury returned a verdict for Shauers, one of the jurors contacted Warger's counsel, claiming that Regina Whipple, the jury foreperson, had revealed during deliberations that her daughter had been at fault in a fatal motor vehicle accident, and that a lawsuit would have ruined her daughter's life. Armed with an affidavit from the juror, Warger moved for a new trial, arguing that Whipple had deliberately lied during *voir dire* about her impartiality and ability to award damages. The District Court denied Warger's motion, holding that Federal Rule of Evidence 606(b), which bars evidence "about any statement made . . . during the jury's deliberations," barred the affidavit, and that none of the Rule's three exceptions, see Rule 606(b)(2), were applicable. The Eighth Circuit affirmed.

*Held:*

  1. Rule 606(b) applies to juror testimony during a proceeding in which a party seeks to secure a new trial on the ground that a juror lied during *voir dire.* Pp. 3–10.

    (a) This reading accords with the plain meaning of Rule 606(b), which applies to "an inquiry into the validity of [the] verdict." This understanding is also consistent with the underlying common-law rule on which Congress based Rule 606(b). The so-called "federal rule" made jury deliberations evidence inadmissible even if used to demonstrate dishonesty during *voir dire.* Both the majority of courts and this Court's pre-Rule 606(b) cases, see *McDonald* v. *Pless*, 238 U. S. 264, 268; *Clark* v. *United States*, 289 U. S. 1, favored this rule over the "Iowa rule," which permitted the use of such jury deliberations evidence. The federal approach is clearly reflected in the lan-

guage Congress chose when it enacted Rule 606(b), and legislative history confirms that Congress' choice was no accident. See *Tanner* v. *United States*, 483 U. S. 107, 125. Pp. 3–8.

(b) Warger's arguments against this straightforward understanding are not persuasive. Pp. 8–10.

(1) First, Warger insists that proceedings for a new trial based on *voir dire* dishonesty do not involve an "inquiry into the validity of the verdict." His reading would restrict Rule 606(b)'s application to claims of error for which a court must examine the manner in which the jury reached its verdict, but the Rule does not focus on the means by which deliberations evidence might be used to invalidate a verdict. It simply applies during a proceeding in which a verdict may be rendered invalid. Pp. 8–9.

(2) Warger also contends that excluding jury deliberations evidence that shows *voir dire* dishonesty is unnecessary to fulfill Congress' objectives, but his arguments would apply to all evidence rendered inadmissible by Rule 606(b), and he cannot escape the scope of the Rule merely by asserting that Congress' concerns were misplaced. P. 9.

(3) Finally, Warger invokes the canon of constitutional avoidance, contending that only his interpretation protects the right to an impartial jury. But that canon has no application here, where there is no ambiguity. See *United States* v. *Oakland Cannabis Buyers' Cooperative*, 532 U. S. 483, 494. Moreover, this Court's *Tanner* decision forecloses any claim that Rule 606(b) is unconstitutional. Similar to the right at issue in that case, Warger's right to an impartial jury remains protected despite Rule 606(b)'s removal of one means of ensuring unbiased jurors. Even if a juror lies to conceal bias, parties may bring to the court's attention evidence of bias before the verdict is rendered and use nonjuror evidence after the verdict is rendered. Pp. 9–10.

2. The affidavit at issue was not admissible under Rule 606(b)(2)(A)'s exception for evidence of "extraneous prejudicial information." Generally speaking, extraneous information derives from a source "external" to the jury. See *Tanner*, 483 U. S., at 117. Here, the excluded affidavit falls on the "internal" side. Warger contends that any information Whipple shared with the other jurors was extraneous because she would have been disqualified from the jury had she disclosed her daughter's accident. However, such an exception would swallow up much of the rest of the restrictive version of the common-law rule that Congress adopted in enacting Rule 606(b). Pp. 11–13.

721 F. 3d 606, affirmed.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

---

No. 13–517

---

## GREGORY P. WARGER, PETITIONER *v.* RANDY D. SHAUERS

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[December 9, 2014]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Federal Rule of Evidence 606(b) provides that certain juror testimony regarding what occurred in a jury room is inadmissible "[d]uring an inquiry into the validity of a verdict." The question presented in this case is whether Rule 606(b) precludes a party seeking a new trial from using one juror's affidavit of what another juror said in deliberations to demonstrate the other juror's dishonesty during *voir dire*. We hold that it does.

I

Petitioner Gregory Warger was riding his motorcycle on a highway outside Rapid City, South Dakota, when a truck driven by respondent Randy Shauers struck him from behind. Warger claims he was stopped at the time of the accident, while Shauers claims that Warger suddenly pulled out in front of him. Regardless of the cause of the accident, no one disputes its tragic result: Warger sustained serious injuries that ultimately required the amputation of his left leg.

Warger sued Shauers for negligence in Federal District Court. During jury selection, counsel for both parties

conducted lengthy *voir dire* of the prospective jurors. Warger's counsel asked whether any jurors would be unable to award damages for pain and suffering or for future medical expenses, or whether there was any juror who thought, "I don't think I could be a fair and impartial juror on this kind of case." App. 105. Prospective juror Regina Whipple, who was later selected as the jury foreperson, answered no to each of these questions. See *id.,* at 83, 89, 105.

Trial commenced, and the jury ultimately returned a verdict in favor of Shauers. Shortly thereafter, one of the jurors contacted Warger's counsel to express concern over juror Whipple's conduct. The complaining juror subsequently signed an affidavit claiming that Whipple had spoken during deliberations about "a motor vehicle collision in which her daughter was at fault for the collision and a man died," and had "related that if her daughter had been sued, it would have ruined her life." App. to Pet. for Cert. 40a–41a.

Relying on this affidavit, Warger moved for a new trial. He contended that Whipple had deliberately lied during *voir dire* about her impartiality and ability to award damages. Thus, he asserted, he had satisfied the requirements of *McDonough Power Equipment, Inc.* v. *Greenwood*, 464 U. S. 548 (1984), which holds that a party may "obtain a new trial" if he "demonstrate[s] that a juror failed to answer honestly a material question on *voir dire*, and . . . that a correct response would have provided a valid basis for a challenge for cause." *Id.*, at 556.

The District Court refused to grant a new trial, holding that the only evidence that supported Warger's motion, the complaining juror's affidavit, was barred by Federal Rule of Evidence 606(b). As relevant here, that Rule provides that "[d]uring an inquiry into the validity of a verdict," evidence "about any statement made or incident that occurred during the jury's deliberations" is inadmis-

sible. Rule 606(b)(1). The Rule contains three specific exceptions—allowing testimony "about whether (A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form," Rule 606(b)(2)—but the District Court found none of these exceptions to be applicable.

The Eighth Circuit affirmed. 721 F. 3d 606 (2013). It first held that Warger's proffered evidence did not fall within the "extraneous prejudicial evidence" exception set forth in Rule 606(b)(2)(A). The court explained that "[j]urors' personal experiences do not constitute extraneous information; it is unavoidable they will bring such innate experiences into the jury room." *Id.*, at 611. Next, the court rejected Warger's alternative argument that Rule 606(b) is wholly inapplicable when a litigant offers evidence to show that a juror was dishonest during *voir dire*. Acknowledging that there was a split among the Federal Courts of Appeals on this question, the Eighth Circuit joined those Circuits that had held that Rule 606(b) applies to any proceeding in which the jury's verdict might be invalidated, including efforts to demonstrate that a juror lied during *voir dire*. Compare *id.*, at 611–612 (citing *Williams* v. *Price*, 343 F. 3d 223, 235–237 (CA3 2003), and *United States* v. *Benally*, 546 F. 3d 1230, 1235 (CA10 2008)), with *Hard* v. *Burlington N. R. Co.*, 812 F. 2d 482, 485 (CA9 1987) ("Statements which tend to show deceit during voir dire are not barred by [Rule 606(b)]"), and *Maldonado* v. *Missouri P. R. Co.*, 798 F. 2d 764, 770 (CA5 1986) (same).

We granted certiorari, 571 U. S. \_\_\_ (2014), and now affirm.

## II

We hold that Rule 606(b) applies to juror testimony

during a proceeding in which a party seeks to secure a new trial on the ground that a juror lied during *voir dire*. In doing so, we simply accord Rule 606(b)'s terms their plain meaning. The Rule, after all, applies "[d]uring an inquiry into the validity of a verdict." Rule 606(b)(1). A postverdict motion for a new trial on the ground of *voir dire* dishonesty plainly entails "an inquiry into the validity of [the] verdict": If a juror was dishonest during *voir dire* and an honest response would have provided a valid basis to challenge that juror for cause, the verdict must be invalidated. See *McDonough*, 464 U. S., at 556.

This understanding of the text of Rule 606(b) is consistent with the underlying common-law rule on which it was based. Although some common-law courts would have permitted evidence of jury deliberations to be introduced to demonstrate juror dishonesty during *voir dire*, the majority would not, and the language of Rule 606(b) reflects Congress' enactment of the more restrictive version of the common-law rule.

Rule 606(b) had its genesis in *Vaise* v. *Delaval*, 1 T. R. 11, 99 Eng. Rep. 944 (K. B. 1785), in which Lord Mansfield held inadmissible an affidavit from two jurors claiming that the jury had decided the case through a game of chance. See 8 J. Wigmore, Evidence §2352, p. 696 (J. McNaughton rev. 1961). The rule soon took root in the United States, *id.,* at 696–697, where it was viewed as both promoting the finality of verdicts and insulating the jury from outside influences, see *McDonald* v. *Pless*, 238 U. S. 264, 267–268 (1915).

Some versions of the rule were narrower than others. Under what was sometimes known as the "Iowa" approach, juror testimony regarding deliberations was excluded only to the extent that it related to matters that "'inhere[d] in the verdict,'" which generally consisted of evidence of the jurors' subjective intentions and thought processes in reaching a verdict. 3 C. Mueller & L. Kirk-

patrick, Federal Evidence §6:16, p. 70 (4th ed. 2013); 8
Wigmore, Evidence §§2353, 2354, at 699–702.[1]  A number
of courts adhering to the Iowa rule held that testimony
regarding jury deliberations is admissible when used to
challenge juror conduct during *voir dire.*  See, *e.g., Mathi-
sen* v. *Norton*, 187 Wash. 240, 244–246, 60 P. 2d 1, 3–4
(1936); *Williams* v. *Bridges*, 140 Cal. App. 537, 538–541,
35 P. 2d 407, 408–409 (1934).

But other courts applied a broader version of the anti-
impeachment rule.  Under this version, sometimes called
the "federal" approach, litigants were prohibited from
using evidence of jury deliberations unless it was offered
to show that an "extraneous matter" had influenced the
jury.  See 3 Mueller & Kirkpatrick, Federal Evidence
§6:16, at 71; Rules of Evidence for United States Courts
and Magistrates, 56 F. R. D. 183, 265 (1973).  The "great
majority" of appellate courts applying this version of the
rule held jury deliberations evidence inadmissible even if
used to demonstrate dishonesty during *voir dire.  Wilson*
v. *Wiggins*, 54 Ariz. 240, 246, 94 P. 2d 870, 872 (1939); see,
*e.g., Willis* v. *Davis*, 333 P. 2d 311, 314 (Okla. 1958);
*Turner* v. *Hall's Adm'x*, 252 S. W. 2d 30, 34 (Ky. 1952);
*Hinkel* v. *Oregon Chair Co.*, 80 Ore. 404, 406, 156 P. 438,
439 (1916); *State* v. *Cloud*, 130 La. 955, 958–960, 58 So.
827, 828–829 (1912); *Payne* v. *Burke*, 236 App. Div. 527,
528–530, 260 N. Y. S. 259, 260–262 (1932).

This Court occasionally employed language that might

———————

[1] The Iowa rule derived from *Wright* v. *Illinois & Miss. Tel. Co.*, 20
Iowa 195 (1866), in which the Iowa Supreme Court held that a trial
court considering a motion for a new trial should have accepted the
affidavits of four jurors who claimed that their damages verdict had
been determined by taking the average of the sums each juror thought
proper (a "quotient" verdict).  *Id.*, at 212–213.  The *Wright* court rea-
soned that, unlike evidence of a juror's subjective intentions in reaching
a verdict, whether the verdict had been obtained in this fashion was an
"independent fact" and thus could and should be proved by any avail-
able evidence.  *Id.*, at 211.

have suggested a preference for the Iowa rule. See *Hyde* v. *United States*, 225 U. S. 347, 383–384 (1912) ("[W]e think the rule expressed in *Wright* v. *Illinois & Miss. Tel. Co.*, 20 Iowa 195 [1866], . . . should apply, that the testimony of jurors should not be received to show matters which essentially inhere in the verdict itself and necessarily depend upon the testimony of the jurors and can receive no corroboration"); *Mattox* v. *United States*, 146 U. S. 140, 148–149 (1892) (quoting at length a Kansas Supreme Court decision setting out the Iowa test). But to the extent that these decisions created any question as to which approach this Court followed, *McDonald* v. *Pless* largely settled matters. There, we held that juror affidavits were not admissible to show that jurors had entered a "quotient" verdict, precisely the opposite of the result reached by the Iowa Supreme Court in its decision establishing the Iowa approach. Compare 238 U. S., at 265, 268, with *Wright* v. *Illinois & Miss. Tel. Co.,* 20 Iowa 195, 211–212 (1866). In doing so, we observed that although decisions in a few States made admissible a "juror's affidavit as to an overt act of misconduct, which was capable of being controverted by other jurors," the argument in favor of that approach (*i.e.*, the Iowa rule) had not been generally accepted, because permitting such evidence "would open the door to the most pernicious arts and tampering with jurors." 238 U. S., at 268 (internal quotation marks omitted).

Our subsequent decision in *Clark* v. *United States*, 289 U. S. 1 (1933), was consistent with our apparent rejection of the Iowa approach. In *Clark*, the Government had prosecuted for contempt a juror who, during *voir dire* in a prior case, had falsely denied knowing the defendant. *Id.*, at 6–8. We held that the prosecution could introduce evidence of what had occurred during deliberations in the prior case, rejecting the juror's argument that these communications were privileged. We were careful to explain,

however, that nothing in our decision was "at variance with the rule . . . that the testimony of a juror is not admissible for the impeachment of his verdict." *Id.*, at 18. This was because the verdict in the original case was not at issue, and therefore "the rule against impeachment [was] wholly unrelated to the problem . . . before us." *Ibid.*; accord, *McDonald*, 238 U. S., at 269. *Clark* thus clarified that the rule against jurors' impeaching their verdicts applies only in a proceeding actually impeaching that verdict—precisely the line Rule 606(b) draws when it refers to an "inquiry into the validity of a verdict."

In any event, these decisions predated Congress' enactment of Rule 606(b), and Congress was undoubtedly free to prescribe a broader version of the anti-impeachment rule than we had previously applied. The language of the Rule it adopted clearly reflects the federal approach: As enacted, Rule 606(b) prohibited the use of *any* evidence of juror deliberations, subject only to the express exceptions for extraneous information and outside influences.[2]

For those who consider legislative history relevant, here it confirms that this choice of language was no accident. Congress rejected a prior version of the Rule that, in accordance with the Iowa approach, would have prohibited juror testimony only as to the "effect of anything upon . . . [any] juror's mind or emotions . . . or concerning his mental processes." Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates, 51 F. R. D. 315, 387 (1971); see *Tanner* v. *United States*, 483 U. S. 107, 123–125 (1987) (detailing the legislative history of the Rule). Thus Congress "specifically understood, considered, and rejected a version of Rule 606(b)" that would have likely

--------

[2] The additional exception for mistakes made in entering the verdict on the verdict form was adopted in 2006. See 547 U. S. 1281, 1286.

permitted the introduction of evidence of deliberations to show dishonesty during *voir dire*. *Id.,* at 125.

## III
### A

Seeking to rebut this straightforward understanding of Rule 606(b), Warger first insists that the proceedings that follow a motion for new trial based on dishonesty during *voir dire* do not involve an "inquiry into the validity of the verdict." His argument is as follows: Under *McDonough*, a party moving for a new trial on the basis of *voir dire* dishonesty need not show that this dishonesty had an effect on the verdict. See 464 U. S., at 556. Although a successful claim will result in vacatur of the judgment, vacatur is simply the *remedy* for the *McDonough* error, just as it may be the remedy for a variety of errors that have nothing to do with the manner in which the jury reached its verdict. See, *e.g.*, *United States* v. *Davila*, 569 U. S. ___, ___ (2013) (slip op., at 12) (listing certain "'structural'" errors warranting "automatic reversal" of a criminal conviction). Therefore, Warger asserts, the "inquiry begins and ends with what happened during voir dire." Brief for Petitioner 19–20.

We are not persuaded. Warger, it seems, would restrict Rule 606(b)'s application to those claims of error for which a court must examine the manner in which the jury reached its verdict—claims, one might say, involving an inquiry into the jury's verdict. But the "inquiry" to which the Rule refers is one into the "*validity* of the verdict," not into the verdict itself. The Rule does not focus on the means by which deliberations evidence might be used to invalidate a verdict. It does not say "during an inquiry into jury deliberations," or prohibit the introduction of evidence of deliberations "for use in determining whether an asserted error affected the jury's verdict." It simply applies "[d]uring an inquiry into the validity of the ver-

dict"—that is, during a *proceeding* in which the verdict may be rendered invalid. Whether or not a juror's alleged misconduct during *voir dire* had a direct effect on the jury's verdict, the motion for a new trial requires a court to determine whether the verdict can stand.

## B

Next, Warger contends that excluding jury deliberations evidence tending to show that a juror lied during *voir dire* is unnecessary to fulfill Congress' apparent objectives of encouraging full and open debate in the jury room and preventing the harassment of former jurors. He observes that jurors remain free to, and may sometimes be forced to, disclose what happened in the jury room, and that ethical rules limit the ability of parties to harass jurors following trial. But these are arguments against Rule 606(b) generally, not arguments for the particular exception to the Rule that Warger seeks. Congress' enactment of Rule 606(b) was premised on the concerns that the use of deliberations evidence to challenge verdicts would represent a threat to both jurors and finality in those circumstances not covered by the Rule's express exceptions. Warger cannot escape the scope of the Rule Congress adopted simply by asserting that its concerns were misplaced.

## C

Nor do we accept Warger's contention that we must adopt his interpretation of Rule 606(b) so as to avoid constitutional concerns. The Constitution guarantees both criminal and civil litigants a right to an impartial jury. See, *e.g.*, *Sheppard* v. *Maxwell*, 384 U. S. 333, 362 (1966); *Thiel* v. *Southern Pacific Co.*, 328 U. S. 217, 220 (1946). And we have made clear that *voir dire* can be an essential means of protecting this right. See, *e.g.*, *Turner* v. *Murray*, 476 U. S. 28, 36 (1986) (plurality opinion); *Ham* v.

*South Carolina*, 409 U. S. 524, 527 (1973). These princi-
ples, Warger asserts, require that parties be allowed to
use evidence of deliberations to demonstrate that a juror
lied during *voir dire.*

Given the clarity of both the text and history of Rule
606(b), however, the canon of constitutional avoidance has
no role to play here. The canon "is a tool for choosing
between competing plausible interpretations" of a provi-
sion. *Clark* v. *Suarez-Martinez*, 543 U. S. 371, 381 (2005).
It "has no application in the absence of . . . ambiguity."
*United States* v. *Oakland Cannabis Buyers' Cooperative*,
532 U. S. 483, 494 (2001). We see none here.

Moreover, any claim that Rule 606(b) is unconstitutional
in circumstances such as these is foreclosed by our deci-
sion in *Tanner*. In *Tanner*, we concluded that Rule 606(b)
precluded a criminal defendant from introducing evidence
that multiple jurors had been intoxicated during trial,
rejecting the contention that this exclusion violated the
defendant's Sixth Amendment right to "'a tribunal both
impartial and mentally competent to afford a hearing.'"
483 U. S., at 126 (quoting *Jordan* v. *Massachusetts*, 225
U. S. 167, 176 (1912)). We reasoned that the defendant's
right to an unimpaired jury was sufficiently protected by
*voir dire*, the observations of court and counsel during
trial, and the potential use of "nonjuror evidence" of mis-
conduct. 483 U. S., at 127. Similarly here, a party's right
to an impartial jury remains protected despite Rule
606(b)'s removal of one means of ensuring that jurors are
unbiased. Even if jurors lie in *voir dire* in a way that
conceals bias, juror impartiality is adequately assured
by the parties' ability to bring to the court's attention
any evidence of bias before the verdict is rendered, and
to employ nonjuror evidence even after the verdict is
rendered.[3]

———————
[3] There may be cases of juror bias so extreme that, almost by defini-

## IV

We further hold, consonant with the Eighth Circuit, that the affidavit Warger sought to introduce was not admissible under Rule 606(b)(2)(A)'s exception for evidence as to whether "extraneous prejudicial information was improperly brought to the jury's attention."

Generally speaking, information is deemed "extraneous" if it derives from a source "external" to the jury. See *Tanner*, 483 U. S., at 117. "External" matters include publicity and information related specifically to the case the jurors are meant to decide, while "internal" matters include the general body of experiences that jurors are understood to bring with them to the jury room. See *id.,* at 117–119; 27 C. Wright & V. Gold, Federal Practice and Procedure: Evidence §6075, pp. 520–521 (2d ed. 2007). Here, the excluded affidavit falls on the "internal" side of the line: Whipple's daughter's accident may well have informed her general views about negligence liability for car crashes, but it did not provide either her or the rest of the jury with any specific knowledge regarding Shauers' collision with Warger.

Indeed, Warger does not argue that Whipple's statements related to "extraneous" information in this sense. Instead, he contends that because Whipple would have been disqualified from the jury had she disclosed her daughter's accident, *any* information she shared with the other jurors was extraneous.

We cannot agree that whenever a juror should have been excluded from the jury, anything that juror says is necessarily "extraneous" within the meaning of Rule 606(b)(2)(A). Were that correct, parties would find it quite

_____

tion, the jury trial right has been abridged. If and when such a case arises, the Court can consider whether the usual safeguards are or are not sufficient to protect the integrity of the process. We need not consider the question, however, for those facts are not presented here.

easy to avoid Rule 606(b)'s limitations. As discussed above, Congress adopted the restrictive version of the anti-impeachment rule, one that common-law courts had concluded precludes parties from using deliberations evidence to prove juror dishonesty during *voir dire*. But if Warger's understanding of the "extraneous" information exception were accepted, then any time a party could use such evidence to show that a juror's "correct response [during *voir dire*] would have provided a valid basis for a challenge"—a prerequisite for relief under *McDonough*, 464 U. S., at 556—all evidence of what that juror said during deliberations would be admissible. The "extraneous" information exception would swallow much of the rest of Rule 606(b).

Even if such a result were not precluded by Congress' apparent intent to adopt the restrictive federal approach, it is foreclosed by *Tanner*, which relied upon the doctrine that "treat[s] allegations of the physical or mental incompetence of a juror as 'internal' rather than 'external' matters." 483 U. S., at 118. *Tanner* cited, in particular, cases holding that evidence of jurors' insanity, inability to understand English, and hearing impairments are all "internal" matters subject to exclusion under Rule 606(b). *Id.*, at 119. Were we to follow Warger's understanding of the "extraneous information" exception, all these cases, including *Tanner*, would have been wrongly decided: If the jurors were not able to serve on the jury in the first place, or should have been dismissed for their misconduct during the trial, then what they said or did during deliberations would necessarily be "extraneous" and admissible. *Tanner*'s implicit rejection of this view easily extends from the sort of juror incompetence considered in that case to the alleged bias considered here. Whether a juror would have been struck from the jury because of incompetence or bias, the mere fact that a juror would have been struck does not make admissible evidence regarding that juror's conduct

and statements during deliberations.

For the foregoing reasons, the judgment of the United States Court of Appeals for the Eighth Circuit is affirmed.

*It is so ordered.*