Filed 12/15/15  P. v. Littlefield CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>TIMOTHY FLOYD LITTLEFIELD,<br><br>        Defendant and Respondent. | A141929<br><br>(Humboldt County<br>Super. Ct. No. CR091204S) |

A jury found defendant Timothy Floyd Littlefield guilty of two counts of sexual intercourse or sodomy with a child 10 years old or younger, one count of penetration with a foreign object, one count of lewd and lascivious acts upon a child, and seven counts of sex or sodomy with a child.  Defendant moved for a new trial based on jury misconduct.  In support, he presented a juror declaration suggesting the juror believed defendant had the burden of proof at trial.  The juror recanted at an evidentiary hearing, testifying he had not personally written the declaration or read it carefully before signing.  The trial court nevertheless granted defendant's motion for a new trial.  The Attorney General now appeals, arguing the juror's declaration and testimony were irrelevant and inadmissible under Evidence Code[1] section 1150.  We agree and reverse.

## BACKGROUND

On December 23, 2009, defendant was charged by information with two counts of sexual intercourse or sodomy with a child 10 years old or younger (Pen. Code, § 288.7,

_____

[1] All statutory references are to the Evidence Code unless otherwise specified.

subd. (a)); one count of penetration with a foreign object (Pen. Code, § 289, subd. (a)(1)); one count lewd and lascivious acts upon a child (Pen. Code, § 288, subd. (a)); and seven counts of sex or sodomy with a child (Pen. Code, § 288.7, subd. (b)). The charges were based on allegations concerning defendant's stepdaughter, Jane Doe.

Defendant was previously married to Jane's mother. Defendant physically abused Jane's mother before and during their marriage. One instance of domestic abuse occurred on or around February 15, 2009. The following day, February 16, defendant's friend Hank visited the family's residence. Jane's mother drove Hank home, leaving Jane with defendant.

On February 17, 2009, Jane told her maternal grandmother that she had been molested by defendant the previous night, while Jane's mother was out with Hank. Jane's grandmother notified Jane's mother and the police. A subsequent medical examination of Jane did not reveal evidence of abrasions, bruises, scars or discolorations, or other signs of abuse. Testing of Jane's clothing showed a microscopically small semen stain. It could not be determined when the clothing was stained or whether the stains were from ejaculate or transfer from other clothing in the laundry.

Defendant testified in his own defense. Defendant denied that he touched, molested, hurt, or sexually abused Jane. He admitted to physically abusing Jane's mother, including on February 16. However, defendant claimed he spent the rest of the evening alone in the house. Hank also testified for the defense, stating he was at defendant's house the night of February 15, not February 16. During closing arguments, defense counsel argued Jane's mother and grandmother fabricated the allegations regarding Jane to punish defendant for his physical abuse of Jane's mother, and so that she could gain sole custody of the couple's biological son. The defense also asserted Jane's mother and grandmother planted semen on Jane's clothing.

The trial court instructed the jury that defendant was presumed innocent until proven guilty beyond a reasonable doubt. The court also stated that defendant's failure to explain or deny evidence against him "is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt." During his closing

2

argument, defense counsel repeatedly reminded the jury that the prosecution had the burden of proof.

The jury found defendant guilty of all counts charged.[2] Defendant subsequently moved for a new trial, arguing jury misconduct prevented fair and due consideration of the case. In connection with the motion, defendant submitted a declaration by juror M.L., dated March 2014. The declaration stated, in relevant part: "I told [defendant's investigator] that I did not feel that the defense had 'proven' their case. I also said that the defense also did not have any evidence to back up their theory of what happened."

Prior to the hearing, defendant filed a revised declaration by juror M.L., dated May 2, 2014, stating: "I told [defendant's investigator] that I did not feel that the defense had 'proven' their case. In that, I meant that the defendant, Timothy Littlefield or his attorney did not prove all or part of their defense. It was my belief that they were obligated to do this in order to find Timothy Littlefield not guilty. I said that the defense also did not have any evidence to back up their theory of what happened."

The trial court held an evidentiary hearing on the matter on May 8, 2014. At the hearing, juror M.L. testified he believed the district attorney had the burden of proof at trial. When asked by defense counsel about the statements in his May declaration, M.L. responded: "But I misspoken [sic] there. And it's the district attorney has the burden of proof, and I thought that you were rebuttal when things were brought up." M.L. also indicated he had not drafted the declarations himself, and he had not read the May declaration in its entirety before signing it.

At the conclusion of the hearing, the trial court granted the motion for a new trial, explaining: "If sentence is imposed in this case on the verdicts that were returned by the jury so many months ago, it likely would be a commitment of 155 years to life. I do not take lightly the extremely serious consequences of the Court's ruling upon the motion for a new trial. Although, I am confident that it was not any form of intentional misconduct by [M.L.], it does appear to me that there was [an] improper shifting of the burden of

---

[2] In an earlier trial, held in October 2011, the jury hung and a mistrial was declared.

3

proof to the defense given the declarations that were signed under penalty of perjury. With that finding by the Court, the defense motion for a new trial at this time is granted."

## DISCUSSION

The Attorney General argues the trial court erred in granting defendant's motion for a new trial because its ruling was based on evidence of juror M.L.'s mental processes, which are inadmissible under section 1150.[3] The Attorney General also argues the trial court's finding of juror misconduct was not supported by substantial evidence, since M.L. consistently testified at the evidentiary hearing that he understood the prosecution had the burden of proof. Defendant argues the evidence concerning M.L. was properly admitted and, in any event, the People waived the section 1150 issue by failing to object below. Defendant further argues M.L.'s declaration alone constitutes substantial evidence of juror misconduct. We agree with the Attorney General, as we find M.L.'s statements regarding his mental processes were of no consequence in assessing the validity of the verdict.

Before delving into this specific case and relevant California precedent, we shall observe this rule of preclusion is not unique to our state jurisprudence. The inadmissibility of juror affidavits such as M.L's declaration to impeach a jury verdict has been rooted in the common law. Lord Mansfield in *Vaise v. Delaval* (1785) 1 T.R. 11, 99 Eng. Rep. 944 found inadmissible an affidavit from two jurors, claiming the jury had decided the case through a game of chance. (*Warger v. Shauers* (2014) ___U.S.___ [135 S.Ct. 521, 526] (*Warger*).) The principle was rooted in *nemo turpitudinem suam allegans audietur*—no man shall be heard to allege his own turpitude. (*People v.*

---

[3] Section 1150, subdivision (a) states: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. *No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined*." (Italics added.)

4

*Hutchinson* (1969) 71 Cal.2d 342, 347.) This "common law rule [has been] in this state since our first volume of reports. (See *People v. Baker* (1851) 1 Cal. 403.)" (*Ibid.*)

This principle of inadmissibility has been adopted in almost every jurisdiction. Indeed, the Federal Rules of Evidence have adopted a position similar to section 1150 in Federal Rules of Evidence, rule 606(b) (Rule 606(b).)[4] In two recent decisions, the United States Supreme Court has relied on Rule 606(b) to preclude efforts by trial counsel to impeach and cancel a jury verdict based on proffered declarations from actual jurors. In *Tanner v. United States* (1987) 483 U.S. 107, the court refrained from considering statements contending certain jurors were intoxicated during the trial and in the jury room; finding such information was improper under Rule 606(b). The Court went even further to observe: "There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct [or] incompetency. . . raised . . . months after the verdict, seriously disrupt the finality of the process. . . . Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct." (*Id*. at pp. 120–121.)

Most recently, Justice Sotomayor wrote for a unanimous court in *Warger* that a juror declaration stating another juror made false statements during voir dire was inadmissible under Rule 606(b) to impeach a verdict. A party's right to an unimpaired jury was *sufficiently* protected by voir dire, the observations of court and counsel during

---

[4] Rule 606(b) states: "During an Inquiry Into the Validity of a Verdict or Indictment.

"(1) *Prohibited Testimony or Other Evidence.* During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters."

the trial, and the potential use of " 'nonjuror evidence' " of misconduct. The right to an impartial jury verdict "remains protected" despite the preclusion of juror declarations and affidavits as a means of ensuring that jurors are unbiased. (*Warger*, *supra*, 135 S.Ct. at p. 529; see *United States v. Shiu Lung Leung* (2015) 796 F.3d 1032, 1036–1037.)

"When a party seeks a new trial based upon jury misconduct, a court must undertake a three-step inquiry. The court must first determine whether the affidavits supporting the motion are admissible. [Citation.] If the evidence is admissible, the court must then consider whether the facts establish misconduct. [Citation.] Finally, assuming misconduct, the court must determine whether the misconduct was prejudicial. [Citations.] A trial court has broad discretion in ruling on each of these questions and its rulings will not be disturbed absent a clear abuse of discretion. [Citation.]" (*People v. Perez* (1992) 4 Cal.App.4th 893, 906.)

On the one hand, M.L.'s May declaration, which was signed under penalty of perjury, indicates he erroneously shifted the burden of proof to defendant. On the other hand, M.L. disavowed the May declaration at the evidentiary hearing, testifying that he did not draft the declaration and did not read it carefully. There is reason to believe M.L. was telling the truth at the evidentiary hearing. The trial court properly instructed M.L. and the rest of the jury on the parties' burden of proof and the reasonable doubt standard, and defense counsel repeatedly reminded the jury of the prosecution's burden of proof during closing argument. Nevertheless, the trial court concluded M.L. may have improperly shifted the burden to the defense, and we cannot second guess such credibility determinations on appeal.

But there was no need for the trial court to resolve the inconsistencies in M.L.'s various statements, as they were all inadmissible and irrelevant to the issue presented. Section 1150 provides that evidence of a juror's subjective mental processes, such as those described by M.L., are inadmissible for the purposes impeaching a verdict. Specifically, the statute states: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a

6

character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (§ 1150, subd. (a).) "Thus, jurors may testify to 'overt acts'—that is, such statements, conduct, conditions, or events as are 'open to sight, hearing, and the other senses and thus subject to corroboration'—but may not testify to 'the subjective reasoning processes of the individual juror . . . .' " (*In re Stankewitz* (1985) 40 Cal.3d 391, 398 (*Stankewitz*).)

Here, the evidence concerning juror M.L. merely reflected his mental processes during deliberations. In both his declarations and his testimony at the evidentiary hearing, M.L. purported to describe his understanding of the parties' burden of proof. M.L. did not mention any overt act or statement that would have affected the jury's reasoning. For example, there is no indication M.L. or any of the other jurors openly spoke about the defendant's purported burden of proof during deliberations. Instead, M.L.'s statements regarding the reasonable doubt standard focused exclusively on his own subjective beliefs.[5] As such, his statements were clearly inadmissible under section 1150.

Contrary to defendant's contention, *People v. Lewis* (2001) 26 Cal.4th 334, does not hold otherwise. In that case, the court stated section 1150 "does not prohibit admitting a statement that reflects a juror's reasoning processes if the statement itself amounts to juror misconduct." (*People v. Lewis*, at p. 389.) But this merely means that a juror may commit misconduct where, for example, he or she makes an erroneous statement of the law to other jurors during deliberations. *Stankewitz*, the authority on which *People v. Lewis* relied, is illustrative. In *Stankewitz*, a juror consulted his own experience as a police officer on a question of law and reached a conclusion that was "totally wrong." (*Stankewitz*, *supra*, 40 Cal.3d at pp. 399–400.) Our Supreme Court held

---

[5] Arguably these could have been views M.L. had before jury service and before he received the court's correct and unchallenged jury instructions.

7

that had the juror merely kept his opinion to himself, "his conduct might be the type of subjective reasoning that is immaterial for purposes of impeaching a verdict." (*Ibid.*) But his actions rose to the level of reversible misconduct when he shared the erroneous opinion with other jurors and vouched for its correctness on the strength of his long service as a police officer. (*Id.* at p. 400.) In contrast, here, it appears juror M.L. *did keep his opinion to himself.* There is no indication M.L. discussed his thoughts on the parties' burden of proof with other jurors, let alone that he held himself out as an expert on the matter.

Defendant argues the People waived their section 1150 objections to juror M.L.'s statements by failing to assert them below. Were the statements merely inadmissible under the rules of evidence, we might agree. (See § 353.) However, M.L.'s statements were also irrelevant to the pertinent inquiry. As our Supreme Court explained in *People v. Steele* (2002) 27 Cal.4th 1230, 1264 (*Steele*): "Because, as a matter of substantive law, the jurors' mental processes leading to the verdict are of no jural consequence, evidence of those mental processes is of no 'consequence to the determination of the action' (Evid. Code, § 210) and hence is irrelevant. Evidence about a juror's thought process may show what that process was, but that process is irrelevant to any legal issue." By granting defendant's motion for a new trial based on such evidence, the trial court was essentially applying the wrong legal standard. This was a clear abuse of discretion. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85.)

A similar conclusion was reached in *People v. Johnson* (2013) 222 Cal.App.4th 486 (*Johnson*). In that case, the defendant moved for release of the jurors' personal identifying information based on declarations by his mother and stepfather concerning their postverdict conversations with several jurors. (*Id.* at p. 490.) The motion was denied. (*Id.* at p. 492. ) On appeal, the court rejected the defendant's argument that the People waived their section 1150 challenge by failing to raise it below. (*Id.* at p. 494.) In

reaching this conclusion, the court relied on *Steele*'s holding that evidence that violates section 1150 is " 'of no jural consequence.' " [6] (*Ibid.*)

Defendant argues *Steele* and *Johnson* are inapposite. He asserts the Supreme Court's opinion in *Steele* does not say whether the prosecution raised a section 1150 objection with the trial court, and thus the opinion does not hold that such an objection is unwaivable. He also argues *Johnson*'s conclusions regarding waiver were erroneous, because they were based solely on *Steele*. We are not persuaded. We recognize cases may not be cited for propositions not decided by them. But while *Steele* does not expressly discuss the issue of waiver, it clearly holds that evidence that violates section 1150 is not merely inadmissible. (*Steele*, *supra*, 27 Cal.4th at p. 1264.) "[A]s a matter of *substantive law*," such evidence is also irrelevant for the purposes of impeaching a verdict. [7] (*Ibid.*, italics added.) Based on these principles, the court in *Johnson* correctly held it would not consider irrelevant evidence on appeal, even if that evidence had been admitted by the trial court without objection in the first instance. (*Johnson*, *supra*, 222 Cal.App.4th at p. 494.)

Defendant further argues that section 353 bars us from second-guessing the trial court based on new arguments raised on appeal. The statute provides that a verdict or finding shall not be set aside by reason of erroneous admission of evidence unless there was a timely objection or motion to strike that evidence. (§ 353, subd. (a).) "The

---

[6] In *Johnson*, the court ultimately remanded for reconsideration of defendant's motion for disclosure of juror's identifying information. (*Johnson*, *supra*, 222 Cal.App.4th at p. 500.) The court found the stepfather's declaration was relevant and admissible to show that at least half of the jury had stated during deliberations that they doubted the defendant's innocence because he did not take the stand to defend himself. (*Id.* at p. 495.) The court held that the mere making of such a statement in the jury room was misconduct. (*Ibid.*)

[7] Defendant's request for judicial notice of the record in *Steele*, *supra*, 27 Cal.4th 1230, is denied. Defendant asserts a review of the record will show the prosecution made a section 1150 objection with the trial court in that case. But, for the reasons set forth above, whether or not the prosecution failed to make a section 1150 objection in *Steele* is irrelevant to our analysis. For similar reasons, we also deny defendant's request for judicial notice of the record in *People v. Gonzalez* (2012) 54 Cal.4th 1234.

9

purpose of this rule is to give the trial court a concrete legal proposition to pass on, to give the opponent an opportunity to cure the defect, and to prevent abuse." (*People v. Holmes* (2012) 212 Cal.App.4th 431, 436.)  Defendant argues that had the prosecution objected in this case, defense counsel could have attempted to cure the defect by searching for additional evidence of overt expressions of M.L.'s misapprehension of the burden of proof, such as declarations or testimony by other jurors.

We are sensitive to defendant's concerns, especially since there is a possibility defendant could have cured the defects in his motion had the People objected below. However, we think the appropriate remedy is not to affirm the order setting aside the verdict based solely on irrelevant evidence and speculation about what defendant could have proved, but to remand for further proceedings to determine whether relevant and admissible evidence of jury misconduct actually exists.  (Cf. *People v. Von Villas* (1992) 11 Cal.App.4th 175, 257 [remanding for further proceedings on a motion for a new trial where "a series of errors on all sides . . . brought about an untenable situation for the trial judge who, in turn, committed error by applying an incorrect legal analysis to the jury misconduct issue"].)

In sum, we find juror M.L.'s statements regarding his mental processes during jury deliberations are irrelevant in assessing the validity of the verdict.  As these statements were the only evidence defendant presented in support of his motion for a new trial, the trial court abused its discretion in granting the motion.

## DISPOSITION

The trial court's order granting defendant's motion for a new trial is reversed.  We remand for further proceedings consistent with this opinion.

_____
DONDERO, J.

We concur:

_____
MARGULIES, Acting P.J.

_____
BANKE, J.