[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12676
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cr-00024-LJA-CHW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES MARCUS LLOYD, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 21, 2016)

Before ED CARNES, Chief Judge, JORDAN, and JULIE CARNES, Circuit
Judges.

PER CURIAM:

After a jury trial, James Marcus Lloyd, III was convicted of possessing a firearm as a convicted felon. Lloyd appeals his conviction, contending that the district court should have granted his request to question all of the jurors or should have ordered a mistrial.

On the second day of Lloyd's trial, the courtroom deputy informed the court that a juror, L.A., had concerns about Lloyd's access to jury questionnaires, which included a special interrogatory about gun ownership. L.A. was afraid that Lloyd might know how many guns she owned and, presumably, that he might steal them "[b]ecause . . . they [were] worth money." The court questioned L.A. about her concerns and assured her that the information on the jury questionnaires would remain confidential. After L.A. told the court that she could presume Lloyd's innocence, the court allowed both parties to question her. Concerned about L.A.'s ability to remain impartial, both parties agreed that she should be excused from the jury, and the court excused her.

During a bench conference, the court asked the courtroom deputy whether L.A. had talked to other jurors about why she had been excused from the jury. The deputy explained that L.A. had an "outburst" and had made some comments as she left the jury room. The court then called L.A. into chambers to question her about those comments. She stated that other jurors, including prospective jurors on the previous day, had also wondered whether Lloyd had access to their jury

2

questionnaires.  She explained: "A couple of other people said things like I wondered that too.  I wondered if I should put down how many guns we owned.  I wondered where it would go.  Who would see it.  How anonymous it was."  Both parties declined the court's invitation to question L.A. further, and the court dismissed her.

Lloyd asked the court to question the other jurors, speculating that they might have drawn the same inference as L.A. — namely, that Lloyd "may be able to connect them to the guns and the place where they live" and steal them.  The court stated that it would bring the panel in for a "strong instruction," but it was "not inclined to question the entire panel extensively on this."   Lloyd then moved for a mistrial.  Finding no evidence that the jury had been tainted, the court denied the motion.

When the remaining jurors returned to the courtroom, the court assured them that the information in the jury questionnaires was confidential.  It also instructed them not to talk about anything related to the case, not to consider anything other than the testimony and evidence from trial, and to presume that Lloyd was innocent unless and until they found that the government had carried its burden of proving him guilty.  Finally, the court asked the jurors twice whether they had any concerns about following the court's instructions.  No jurors indicated that they did.  The trial continued, and the jurors returned a verdict finding Lloyd guilty.

3

Lloyd appeals his conviction, contending that the district court abused its discretion by denying his motion to question the jurors about any conversation they might have had regarding his access to their information, and by denying his motion for a mistrial.  He argues that because L.A. shared with other jurors her concerns about his access to their jury questionnaires, the district court had a duty to question other jurors about that conversation.  Lloyd also argues that, even if the jurors did not discuss extraneous information, they did prematurely discuss issues in the case.  He asserts that the verdict may have been compromised because the remaining jurors were likely concerned that Lloyd was a threat to their property and safety.

We review for abuse of discretion a district court's denial of a motion for a mistrial based on alleged juror misconduct.  United States v. Alexander, 782 F.3d 1251, 1256 (11th Cir. 2015).  We also review for abuse of discretion the procedures used to address alleged juror misconduct.  United States v. Sammour, 816 F.3d 1328, 1336 (11th Cir. 2016).

The Sixth Amendment guarantees criminal defendants the right to trial by an impartial jury.  U.S. Const. Amend. VI.  Courts presume a jury has been impartial, but a defendant may rebut this presumption by making a "colorable showing" that the jury was exposed to extraneous information.  United States v. Siegelman, 640 F.3d 1159, 1182 (11th Cir. 2011).  Information is "extraneous" if it is from a

4

source external to the jury.  United States v. Cavallo, 790 F.3d 1202, 1226 (11th Cir. 2015).  "'External' matters include publicity and information related specifically to the case the jurors are meant to decide . . . ."  Id. (citing Warger v. Shauers, 574 U.S. __, 135 S. Ct. 521, 529 (2014)).  If a defendant shows that jurors were exposed to extraneous information, prejudice is presumed, and the burden shifts to the government to show that the exposure was harmless to the defendant.  Siegelman, 640 F.3d at 1182.

We have, however, recognized a distinction between communications among jurors and communications between jurors and sources outside the jury.  United States v. Bradley, 644 F.3d 1213, 1276 (11th Cir. 2011).  When the alleged misconduct involves comments made by and between jurors — instead of information from the media or other outside influences — a court's discretion in deciding whether to question jurors is "at its zenith."  Id. at 1277.  Because of a district court's familiarity with the jurors and the conduct at issue, it has broad discretion in deciding how to address potential misconduct, including whether to question jurors accused of improper communication.  Id. at 1276–77.  As a result we must affirm the district court's decision as long as it was not a "clear error of judgment" — even if we would have addressed the misconduct differently.  United States v. Dominguez, 226 F.3d 1235, 1247 (11th Cir. 2000).

In this case, the district court did not abuse its discretion in the manner it responded to the problem. The conduct at issue involved comments made by and between L.A. and the other jurors — not information coming to the jury from outside influences. The district court's discretion, therefore, was "at its zenith" when it decided not to question the other jurors about any related conversations. When questioned by the court, L.A. stated that other jurors had also wondered whether Lloyd had access to their personal information and whether the jury questionnaires, including details about their gun ownership, were anonymous. Her answers do not show that other jurors expressed any fear that Lloyd could be a threat to their safety. The district court, which was familiar with the jurors and the conduct, found that "there [was] no evidence . . . [that] the entire jury ha[d] been tainted." Lloyd's allegation of misconduct is merely speculative, lessening the district court's burden to investigate any further. See United States v. Harris, 908 F.2d 728, 734 (11th Cir. 1990) ("The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate.") (alteration omitted).

The district court's investigation of the alleged misconduct was adequate. It questioned L.A. twice and gave both parties the opportunity to question her. After careful consideration, it chose to address the remaining jurors as a group. The court reasoned that questioning them extensively about the alleged misconduct "might taint the panel more than anything else." It also gave the jury a thorough

6

curative instruction, explaining that their personal information was protected from disclosure and admonishing them not to consider anything other than the testimony and evidence presented at trial.  When questioned by the court, no juror expressed any hesitation about following its instructions, and the court resumed the trial. Lloyd's position fails to acknowledge the amount of discretion trial courts have in addressing alleged juror misconduct.  See Bradley, 644 F.3d at 1276–77.

Lloyd's argument that the jury's conversation constituted "premature discussion of certain issues in the case" fails for similar reasons.  While L.A.'s statements show that some jurors wondered whether Lloyd had access to the information in their jury questionnaires, they do not show that they discussed substantive issues in the case before deliberations.  Instead, after questioning the juror itself and providing opportunities for both sides to do so, the court found no evidence that the jury had been tainted.  "[A] defendant alleging juror bias must do more than speculate."  Sammour, 816 F.3d at 1339 (quotation marks omitted). Lloyd's argument that the "jurors had a possibly prejudicial" conversation and that there was a possibility that the jury was biased does nothing more than speculate.

The court's rulings do not reflect a clear error of judgment.  The court properly exercised its discretion in declining to question the jurors more extensively and in denying Lloyd's motion for a mistrial.

**AFFIRMED.**

7

JORDAN, Circuit Judge, concurring:

Although I think the better practice would have been to question the remaining jurors, I agree with the court that there was no abuse of discretion, and therefore join its opinion.