

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00124-CV
_____

IN THE INTEREST OF L.A.M. AND L.R.M., CHILDREN

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 73,240-C; Honorable Ana Estevez, Presiding

May 24, 2022

## CONCURRING AND DISSENTING OPINION

Before PIRTLE and PARKER and DOSS, JJ

In principle, I concur with the vast majority of Justice Parker's opinion. I dissent and write separately, however, to address what to me is 'the fly in the ointment'—Juror M.S.[1] Not every issue is easy to articulate or to express in neat and precise legal arguments. Sometimes issues are obfuscated by legal technicalities or procedural

---

[1] In her majority opinion, Justice Parker refers to the juror in question by her initials, M.S. For clarity, I will follow the same format.

nuances. Sometimes they are overly simplified by vague claims of unfairness or injustice. Some of Appellant's complaints about Juror M.S. are just that kind of claim.

**BACKGROUND**

This matter was tried before a jury in September 2020. One of the venire members, M.S., knew Appellee, Chad Marchbanks, as an old high school friend. The two corresponded on social media before, during, and after the trial. That information was not, however, disclosed during voir dire or at any point prior to the jury verdict.

At the close of testimony, Appellant, Courtney Marchbanks, moved for an instructed verdict which the trial court denied.[2] Upon submission to the jury, ten of the twelve jurors determined that Chad should be appointed sole managing conservator of L.A.M. and L.R.M.[3] M.S. was one of those ten jurors. On March 10, 2021, the trial court electronically signed the *Order Modifying Parent-Child Relationship*, appointing Chad as sole managing conservator, appointing Courtney as possessory conservator, and awarding her a standard possession order with elections. Courtney filed an initial and an amended motion for mistrial and a motion for new trial. All of these motions were denied. The trial court subsequently issued *Findings of Fact and Conclusions of Law.*

Relevant to the issues regarding Juror M.S., the trial court made the following findings of fact:

- Juror M.S. did not engage in juror misconduct.

---

[2] Courtney discusses the September 2019 deposition of Chad's adult son, Brandon. During the deposition, Brandon described many instances of severe physical and psychological abuse perpetrated by his father. Brandon was not permitted to testify at trial and the deposition was introduced in a post-verdict hearing, not as evidence during the trial.

[3] To protect the privacy of the minor children involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d).

- Juror M.S. properly identified herself as having knowledge of Chad during voir dire.

- Courtney had a "meaningful opportunity" to voir dire Juror M.S.

- Courtney did not utilize her opportunity to question Juror M.S. during voir dire.

- Information regarding Juror M.S.'s knowledge of Chad was available to or in the possession of Courtney prior to jury selection.

- Courtney did not attempt to strike Juror M.S. for cause.

- Courtney did not use a peremptory strike against Juror M.S.

- Courtney did not show Juror M.S.'s prior knowledge of Chad was material.

- Courtney did not show Juror M.S.'s prior knowledge of Chad probably caused injury.

**ANALYSIS**

Restated, the over-arching issue I consider here is whether, under the circumstances in this particular case, does a trial court err in failing to grant a motion for new trial when a party fails to disclose a personal relationship with a juror of such a character as to raise a serious question about the fairness and impartiality of that juror. For the reasons set forth herein, under the circumstances of this case, I would find that it does.

The right to an impartial jury is a fundamental right guaranteed by the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, and by principles of due process. *Warger v. Shauers*, 574 U.S. 40, 50, 135 S. Ct. 521, 190 L. Ed. 2d 422 (2014). Thus, the Constitution guarantees both criminal and civil litigants a right to an impartial jury. *Id.* (citing *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966); *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220, 66 S. Ct.

3

984, 90 L. Ed. 1181 (1946)).  A fair trial before an impartial jury is a <u>basic requirement of</u> <u>due process</u>.  *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 366 (Tex. 2000) (citing *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955)).  With these principles in mind, we must nevertheless be mindful that the goal of a trial by a jury free from bias or misconduct must be balanced against other legitimate interests.  *Golden Eagle Archery, Inc.*, 24 S.W.3d at 366 (citation omitted).

Here, the parties do not dispute that prior to trial, Courtney tendered a discovery request seeking identification of Chad's "friends" on social media and that Chad provided such a list but did not at that time include M.S.  This disclosure *may* have been accurate when made; however, it was established during the hearing on the motion for new trial that Chad "friended" M.S. on social media only days prior to the commencement of trial, and then, only after her name had appeared on the list of potential jurors for his upcoming trial.  Thereafter, Chad failed to supplement his response to Courtney's discovery request as required by the applicable rules of discovery.  At no time before, during, or after trial did Chad disclose his recent contact with M.S., or her new status as a "friend" on social media.

Texas Rule of Civil Procedure 193.5 provides as follows:

**(a) Duty to Amend or Supplement.**  If a party learns that the party's response to written discovery was incomplete or incorrect when made, or, although complete and correct when made, is no longer complete and correct, the party must amend or supplement the response:

> **(1)** to the extent that the written discovery sought the identification of persons with knowledge of relevant facts, trial witnesses, or expert witnesses, and

4

**(2)** to the extent that the written discovery sought other information, unless the additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses.

**(b) Time and Form of Amended or Supplemental Response.** An amended or supplemental response must be made reasonably promptly after the party discovers the necessity for such a response. Except as otherwise provided by these rules, it is presumed that an amended or supplemental response made less than 30 days before trial was not made reasonably promptly. An amended or supplemental response must be in the same form as the initial response and must be verified by the party if the original response was required to be verified by the party, but the failure to comply with this requirement does not make the amended or supplemental response untimely unless the party making the response refuses to correct the defect within a reasonable time after it is pointed out.

TEX. R. CIV. P. 193.5.

Texas Rule of Civil Procedure 193.6 provides the remedy for violating Rule 193.5.

It provides as follows:

**(a) Exclusion of Evidence and Exceptions.** A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

**(1)** there was good cause for the failure to timely make, amend, or supplement the discovery response; or

**(2)** the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

**(b) Burden of Establishing Exception.** The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

**(c) Continuance.** Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may

5

grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

TEX. R. CIV. P. 193.6.

Parties have an affirmative duty to supplement answers to discovery requests if an answer "is no longer true and complete and the circumstances are such that failure to amend the answer is in substance misleading." *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex. 1989) (citation omitted). The typical sanction for failure to comply with this rule is exclusion of the evidence affected by the violation. *Id.* (citations omitted).

The record indicates that neither Chad nor M.S. alerted the parties, attorneys, or the court that they had been friends in high school and maintained a friendship over social media at the time of the trial. Clearly, their relationship would have been a matter of critical interest to Courtney in the jury selection process. In her motion for new trial, Courtney states M.S. "gave erroneous and incorrect answers on voir dire examination that concealed her bias toward" Chad. She claimed M.S. remained deceptively silent and initially said nothing when the court asked the panel, "I just need to know if anybody knows the parties or any of the lawyers that have been introduced in such a way that they could not set aside whatever relationship that was and base their verdict solely on the evidence. So if you have either a good relationship or a bad relationship, it doesn't matter. If it is going to make a difference for this case, I need to know that. So if anybody feels that way, please raise your hand."[4]

---

[4] Several jurors were called for further questioning. M.S. was not among those called.

Defense counsel later asked the panel whether the venire members knew either of the parties. M.S. merely "raised her hand and silently nodded." Courtney argues these "silent gestures were insufficient to alert [Courtney through M.S.]'s mask and shield required because of Covid-19 precautions" of her true relationship with Chad. Therefore, Courtney argues she saw nothing that would have prompted her to examine M.S. further during the voir dire process or to suspect M.S. and Chad knew one another on a personal basis. She contends M.S.'s response was less than candid and was intended to deceive.

Of significance, Courtney notes that M.S. sent Chad a "friend request" on social media and engaged in interaction with him on that platform within a few days of jury selection. In his appellate brief, Chad admitted he accepted a friend request from M.S. on August 30, 2020, shortly after an exchange on social media between high school classmates. Chad denied any connection between the friend request and the availability of the juror list four days earlier on August 26, 2020. Chad further stated he did not see the jury list until the morning of voir dire, September 14, 2020.

In her motion for new trial, Courtney stated that after the jury verdict, she discovered M.S.'s pre-hearing social media posts about Chad in which M.S. said she has "always loved" Chad, that he is "[s]uch a precious guy!!" and that he "deserves the best!" M.S. had also congratulated Chad on his marriage to Courtney and commented "[b]eautiful family" on a picture posted by Chad. Courtney also noted a conversation via comments to a social media post about Chad and his friends when they were in high school. Without a doubt, the fact that M.S. (1) had been friends with Chad in high school, (2) had some interaction with him on social media shortly prior to the trial, (3) apparently had a favorable feeling toward him, and (4) had participated in recent interactions with

7

him should have been disclosed to Courtney via a supplemental discovery response and to the court in response to her inquiry.

M.S. was a crucial juror. She voted favorably in Chad's interest in a 10-2 verdict. From the record before us, under these circumstances, it is impossible to ascertain what harm Courtney may have suffered as a result of Chad's failure to supplement his responses or M.S.'s failure to make a more accurate disclosure of her relationship with Chad in response to questions asked. That being said, the right to a jury trial by a fair and impartial jury is a fundamental right implicating issues of fairness and due process of law. Under the circumstances of this case, the statutory sanctions set forth in Rule 193.6 (exclusion of undisclosed information) are both inappropriate and inadequate to rectify any harm caused. Accordingly, I would find that where critical information about a potential juror has been knowingly withheld from the opposing party and non-disclosure of that information has resulted in the seating of that juror and where the jury's verdict is dependent upon the vote of that juror, serious questions pertaining to the due process of law have been raised. In such a case, the only remedy that guarantees all parties their fundamental right to a fair trial is a new trial. As such, I sustain Courtney's issue regarding the seating of Juror M.S.

### CONCLUSION

Having sustained Courtney's issue regarding the seating of Juror M.S., I would pretermit the remaining issues, reverse the judgment of the trial court, and remand for further proceedings.

Patrick A. Pirtle
Justice

8