# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39061**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jonathan P. ROBERTSON**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 October 2017

————————————

*Military Judge:* Marvin W. Tubbs II.

*Approved sentence:* Bad-conduct discharge and reduction to E-3. Sentence adjudged 29 January 2016 by GCM convened at Offutt Air Force Base, Nebraska.

*For Appellant:* Captain Patrick A. Clary, USAF.

*For Appellee:* Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Major Matthew L. Tusing, USAF; James W. Beckwith, Legal Extern[1]; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and MINK, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge MINK joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

---

[1] In accordance with Rule 6.1 of the court's Rules of Practice and Procedure, Mr. Beckwith was at all times supervised by counsel for the Government during his participation.

JOHNSON, Senior Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[2] The court-martial sentenced Appellant to a bad-conduct discharge and reduction to the grade of E-3. The convening authority approved the adjudged sentence.

Appellant raises three issues for our consideration on appeal: (1) whether the military judge erroneously denied the Defense the opportunity to investigate evidence of panel member misconduct; (2) whether his conviction is legally or factually insufficient; and (3) whether the finding of guilty and the sentence must be set aside in light of the holding of the Court of Appeals for the Armed Forces (CAAF) in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). We answer the first two questions in the negative, and although we find the military judge did err in light of *Hills* we find the error harmless beyond a reasonable doubt. Therefore, we affirm the findings and sentence.

## I. BACKGROUND

Staff Sergeant (SSgt) AO met Appellant in 2010 when they were both stationed at Offutt Air Force Base (AFB), Nebraska, where they served as aircraft maintainers. SSgt AO and Appellant became part of a close-knit group of friends who spent a considerable amount of time together, particularly on weekends at the house Appellant shared with another maintainer, SSgt MM. The group would eat, drink alcohol, play games, listen to music, and generally "hang out." Although SSgt AO was the only female member of the core group, they were "like brothers" to her and she was treated and behaved as "one of the guys." For a period of six or seven months, as she was divorcing her then-husband, SSgt AO temporarily moved into the house Appellant and SSgt MM shared.

One evening, when SSgt MM was away on temporary duty, the rest of the group gathered at Appellant's house as usual. Because SSgt MM was away, SSgt AO decided to sleep in his room. While SSgt AO was awake but lying on the bed, Appellant got on the bed, "cuddled up" next to her, and began "kissing [her] neck or whispered something in [her] ear." Appellant departed after SSgt AO told him to stop. SSgt AO did not feel "threatened" or "bothered" by the incident and told their other friends about it the next day. On other occasions, Appellant would "smack [her] butt" or "grab [her] boob" in a way SSgt AO did

---

[2] The court-martial found Appellant not guilty of two specifications of rape and one specification of abusive sexual contact in violation of Article 120, UCMJ.

not perceive as "overtly sexual" and which "didn't make [her] feel uncomfortable," because "that's how he interacted with everybody."

Sexual banter was also common within the group. On another occasion, in the presence of another friend, SSgt AO repeatedly asked Appellant to show his penis to her. Appellant eventually agreed, provided SSgt AO would reveal her breasts to him in return. After the other friend stepped away, Appellant and SSgt AO briefly exposed themselves to each other as agreed.

In the fall of 2012, Appellant travelled to Kadena Air Base (AB), Japan, for three months as part of a routine unit deployment. In December 2012, SSgt AO also travelled to Kadena AB for a deployment that overlapped Appellant's by two or three days. At the time, SSgt AO was living with her boyfriend, SSgt JS, a friend of Appellant's who was also stationed at Offutt AFB. Appellant had a civilian girlfriend who lived near Offutt AFB in Omaha, Nebraska.

On the night she arrived at Kadena AB, SSgt AO attended an all-night party with numerous other members of the unit, including Appellant. The party was held in a billeting room in the same building where SSgt AO was staying. At one point, Appellant asked SSgt AO for her room key so that he could sleep in her room because his room was in another building significantly further away. SSgt AO declined to give him the key, but she let him into her room and told him he could "pass out" on the bed. SSgt AO then returned to the party.

Later SSgt AO returned to her room to get dressed for a briefing she had to attend that morning. Another member of the unit, SSgt RS, went with her and unsuccessfully attempted to awaken Appellant, who was still there. SSgt AO changed into her uniform in the bathroom while SSgt RS waited at the door, and then she departed for her in-processing appointment. When SSgt AO returned to the room alone several hours later, Appellant was still sleeping on the bed. Having been awake for over 24 hours, feeling "[e]xhausted," "[h]ung over," and "[j]ust very out of it," SSgt AO changed out of her uniform into a t-shirt and gym shorts, laid down in the bed facing away from Appellant, and fell asleep.

SSgt AO testified she awoke to find Appellant lying "just behind her" and "kind of cuddling" her. Initially she pretended to be asleep as he began touching her. However, when he inserted his fingers in her vagina, she said "Johnny, stop. What are you doing?" Appellant then grabbed her arm and put her hand on his penis. SSgt AO repeatedly told him to stop and asked him to think about his girlfriend and her boyfriend. When Appellant persisted, she squeezed his penis as hard as she could, causing Appellant to temporarily let go of her arm. However, he grabbed her wrist again and tried to insert his penis in her vagina

despite her continued pleas to stop. SSgt AO locked her legs together and Appellant was only able to insert the tip of his penis. SSgt AO testified Appellant then "flipped" her over on her stomach, placed his knee on her in the area of her thigh, waist, or hips, and began to masturbate as he grabbed her buttocks and tried to grab her breasts. Appellant then flipped SSgt AO onto her back and straddled her with his knees on her arms. Appellant continued to masturbate until he ejaculated on SSgt AO's stomach. Appellant then got up, retrieved a washcloth from the bathroom, and placed it on SSgt AO's stomach. SSgt AO told Appellant to leave and locked herself in the bathroom.

Appellant also testified regarding the December 2012 incident. He stated he awoke in SSgt AO's room at Kadena AB and found SSgt AO sleeping next to him in a t-shirt and underwear. According to Appellant, he shook SSgt AO to wake her up and they had a brief work-related conversation. Appellant then asked SSgt AO if she wanted to "mess around" and she agreed, though she refused when he asked if they could have sex. After kissing SSgt AO and touching her breast, Appellant moved his hand toward her vagina but she stopped him. Appellant got undressed and SSgt AO removed her own shirt. They then continued kissing, and Appellant "grabbed her breasts and sucked on her breasts." Appellant again asked SSgt AO if she wanted to "have sex," and she again refused. He denied ever penetrating her vagina with his fingers or penis, or placing SSgt AO's hand on his penis. Although Appellant was "not exactly sure how much time went on after that," he "ended up getting on top of her with her legs kind of closed and I was straddled over her in, kind of like, her hip area and I kept grabbing her breasts and then I started masturbating." Appellant testified he ejaculated on SSgt AO's stomach, then retrieved a rag from the bathroom and wiped her stomach with it. At that point, according to Appellant, "she kind of like freaked out. It was almost kind of like a light switch went off and she jerked out of bed. When she got up, she was like, 'Johnny, I think you need to leave,' and ran into the bathroom and turned on the shower."

SSgt AO testified she remained in the bathroom for approximately an hour, scrubbing her stomach in the shower. When she emerged, Appellant was gone; however, he left a note which read "Please don't be mad. Let's do dinner tonight." Shortly thereafter, SSgt AO contacted her boyfriend, SSgt JS, via Skype and told him what happened. She also called her mother and informed her parents. Later on the same day of the assault, SSgt AO received a series of messages from Appellant via Facebook which read: "hungry? I think we are goin to cocos,"[3] "??" and "u mad at me?" SSgt AO did not respond and never directly spoke to Appellant again. Appellant departed Kadena AB within a few days; on the day he left, SSgt AO made a restricted sexual assault report to the

---

[3] Cocos is a chain of curry restaurants in Japan.

Kadena AB Sexual Assault Response Coordinator (SARC). Because the report was restricted, the SARC did not inform the unit commander or law enforcement at that time.

SSgt AO also informed two of their mutual friends, SSgt MM and Master Sergeant (MSgt) WL, of the incident shortly after it occurred. MSgt WL and SSgt MM confronted Appellant soon after he returned to Offutt AFB from Kadena AB. Appellant, who appeared "nervous" and "uncomfortable" to SSgt MM, related a similar version of events to what SSgt AO had told them, except in Appellant's version she consented. Neither MSgt WL nor SSgt MM reported the incident to their command or to law enforcement at that time, but both stopped speaking with Appellant after this confrontation. However, Appellant sent MSgt WL a text message which resulted in the following exchange:

> Appellant: [MSgt WL] im sry u have to deal w all this. I apoligize a million times and for you to have to lie to [Appellant's girlfriend] is unacceptable. I know u hate me right now but I just hope u can forgive me for what ive done wrong. [sic]

> MSgt WL: I don't hate you. Just really disappointed and I hate the situation.

> Appellant: I def hate it as well and understand why u r disappointed. I truly am sry . . . [sic]

In May 2013, SSgt JS told SSgt AO that Appellant had briefly spoken to him on duty without mentioning the Kadena AB incident. SSgt AO then sent the following text message to Appellant and received the following response:

> SSgt AO: I never intended to speak to after that first night in Kadena when you took so much away from me, but I feel like you have left me with no choice. I am at a loss for words that you, someone I considered to be like a brother to me and one of my closest friends, can't even act like a decent human being and leave my loved ones alone. You have no right to so much as look at [SSgt JS], let alone say "hello" or try to talk about ANYTHING besides how sorry YOU are for doing what YOU did to me, him and the rest of our friends. We have all been hurt from what YOU have done. The fact that you have decided that you can go on with your life pretending that nothing has happened disgusts me. Just seeing your face or hearing the sound of your voice makes me sick to my stomach. I have struggled to understand what YOU have done to me for the last 5+ months. You and I both know what happened that day, and we both know that YOU threw away an amazing friendship for disgusting and UN-WANTED sexual gratification. You have degraded me enough,

> you don't need to continue to degrade me anymore. Leave [SSgt JS] and I alone. You don't need to look at us, speak to us or even to acknowledge or [sic] presence.

> Appellant: there is no excuse for my actions and I fully respect what you are saying and I will avoid all contact with you. Im terribly sorry for what happened and obviously wish I could take that day back. You were family to me and I crossed the line. This is the last you will here from me [sic]

SSgt AO and SSgt JS ended their relationship in October 2013. In May 2014, SSgt AO made an unrestricted report of the sexual assault. Afterwards, she obtained a reassignment to another base.

Appellant was charged with one specification of rape by digitally penetrating SSgt AO's vagina by unlawful force, one specification of rape by penetrating her vulva with his penis by unlawful force, one specification of abusive sexual contact by forcing her hand onto his penis, and one specification of abusive sexual contact by touching her buttocks and breasts, all in violation of Article 120, UCMJ, and all arising from the December 2013 incident in SSgt AO's billeting room at Kadena AB. A panel of officer and enlisted members convicted Appellant of the last of these specifications and acquitted him of the others.

## II. DISCUSSION

### A. Evidence of Panel Member Misconduct

#### 1. Additional Background

After findings but before sentencing proceedings began, the military judge stated for the record that one of the court members, MSgt GO, had attempted to speak with him during a recess. The military judge declined to speak with him. The military judge stated MSgt GO then "went and spoke with the bailiff that another member had something in his – or her because he did not identify who it was – past that should have been disclosed that swung the vote in favor of conviction." The military judge advised the parties he intended to conduct a limited inquiry with MSgt GO before further discussing with counsel how to resolve the matter. After informing MSgt GO of the general prohibition on disclosing court member deliberations, the military judge conducted the following colloquy with MSgt GO:

> Military Judge [MJ]: First, as I understand it, last night you made a statement to the bailiff, something to the effect of there was something from another member that should have been disclosed that was not that swung the vote in favor of conviction. Is

that an accurate summary of what you said? If the answer is no, go ahead and say no.

MSgt GO: No.

MJ: When you spoke to the bailiff, did you identify any other member by name?

MSgt GO: No.

MJ: Did you identify any specific piece of information?

MSgt GO: No.

MJ: Did you tell the bailiff that there was a piece of information on the part of another member that should have been disclosed?

MSgt GO: Yes.

MJ: And did you say that had an impact on the vote?

MSgt GO: No.

. . .

MJ: So what was the second half of that statement?

MSgt GO: That one of the members experienced an event that I do not believe was disclosed.

MJ: Okay. Then the second half was -- did you say that it had some sort of impact to the bailiff?

MSgt GO: Not on the vote, sir. On whether or not the member should have been there.

MJ: Let me -- I'm going to summarize, so let me make sure I understand what I think you have said; that there was something in a member's past that was not disclosed and that had some sort of impact on a discussion as to whether the member should have been there. Is that what you just said?

MSgt GO: I'm not sure that the member --

MJ: I know you're not sure as to what was or was not disclosed during portions of the selection process. I understand. I'm just trying to get at what you told the bailiff.

MSgt GO: Yes, sir.

MJ: Did I summarize that accurately?

MSgt GO: I believe so, sir.

> MJ: Okay. My next question to you is, do you feel that whatever you are talking about would constitute unlawful command influence -- was this something about something that a superior or --
>
> MSgt GO: No, sir.
>
> MJ: -- convening authority or somebody had brought to bear on somebody that was brought to the attention of the panel?
>
> MSgt GO: No, sir.
>
> MJ: So this is -- what you are talking about is something that occurred during the member selection process, the *voir dire* process where I asked questions and both counsel asked questions?
>
> MSgt GO: Yes, sir.
>
> MJ: You may be excused at this point, [MSgt GO].

After a short recess, the Defense moved for a mistrial as to the finding of guilty, citing Military Rule of Evidence (Mil. R. Evid.) 915. The Government opposed the motion, citing the United States Supreme Court's decision in *Warger v. Shauers*, 135 S. Ct. 521 (2014). In an oral ruling, the military judge denied the motion. He noted MSgt GO was "not in a position to make a determination that a member should or should not sit on the court-martial," and he stated that Mil. R. Evid. 606(b)'s general prohibition against inquiring into court-martial deliberations prevented delving further into discussions among the panel to ascertain whether a declaration of mistrial was manifestly necessary.

The Defense then sought to reopen voir dire based on MSgt GO's disclosure, not to impeach the verdict but to potentially exclude for cause one or more court members from the sentencing proceedings. The Government again opposed. The military judge denied the request, finding MSgt GO's disclosure was an improper disclosure of court member deliberations, and therefore could not serve as a basis to reopen voir dire. After the military judge denied a further Defense request to reconsider his denial of the request for a mistrial, the court-martial proceeded to the sentencing phase.

On appeal, Appellant contends the military judge erroneously determined MSgt GO's disclosure could not, under Mil. R. Evid. 606(b), be considered, without adequately exploring whether the situation fit an exception under Mil. R. Evid. 606(b)(2) to the general rule of non-disclosure. Accordingly, Appellant requests this court remand the case for a post-trial evidentiary hearing to determine if one of the exceptions is implicated, and if so, whether the panel was impartial, whether there was court member misconduct, and whether a rehearing is warranted. We are not persuaded.

### 2. Law

"[I]n the context of inquiring into members' conduct during the proceedings or deliberations, a military judge's decision is reviewed for an abuse of discretion." *United States v. Lambert*, 55 M.J. 293, 296 (C.A.A.F. 2001). "In making the determination whether to investigate [alleged court member misconduct] and what kind of investigation to make, as well as whether and to what extent the conduct was prejudicial, the trial court has wide discretion." *Id.* at 295 (citations omitted). "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Erickson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (quoting *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015)) (internal quotation marks omitted) (citation omitted).

A court member's failure to disclose information in voir dire entitles an appellant to a new trial when the appellant demonstrates both (1) the member failed to answer honestly a material question on voir dire, and (2) a correct response would have provided a valid basis for a challenge for cause. *United States v. Mack*, 41 M.J. 51, 55 (C.M.A. 1994).

Mil. R. Evid. 606(b)(1) provides:

> *Prohibited Testimony or Other Evidence.* During an inquiry into the validity of a finding or sentence, a member of a court-martial may not testify about any statement made or incident that occurred during the deliberations of that court-martial; the effect of anything on that member's or another member's mental processes concerning the finding or sentence; or any member's mental processes. . . .

Exceptions permit court members to testify as to whether "extraneous prejudicial information was improperly brought to the members' attention," "unlawful command influence or any other outside influence was brought to bear on any member," or "a mistake was made in entering the finding or sentence on the finding or sentence form." Mil. R. Evid. 606(b)(2). Similarly, Rule for Courts-Martial (R.C.M.) 923 provides "[f]indings which are proper on their face may be impeached only when extraneous prejudicial information was improperly brought to the attention of a member, outside influence was improperly brought to bear upon any member, or unlawful command influence was brought to bear upon any member."

Interpreting Federal Rule of Evidence 606(b), the civilian counterpart to Mil. R. Evid. 606(b), in *Warger* the Court found the prohibition on juror testimony regarding statements made during jury deliberations applies "during a proceeding in which a party seeks to secure a new trial on the ground that a juror lied during *voir dire*." 135 S. Ct. at 525.

### 3. Analysis

MSgt GO's disclosure regarding another member's statements during deliberations clearly implicated Mil. R. Evid. 606(b). The military judge's carefully limited inquiry indicated the statement by the unnamed member did not involve unlawful command influence, other outside influence, or extraneous prejudicial information regarding the case, but rather an "event" the member "experienced" that MSgt GO believed should have been disclosed in voir dire. Such personal experiences are not "extraneous prejudicial information" for purposes of the rule. As the Court explained,

> Generally speaking, information is deemed 'extraneous' if it derives from a source 'external' to the jury. 'External' matters include publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room.

*Warger*, 135 S. Ct. at 529 (citations omitted). In some cases a court member's failure to disclose information in voir dire may be grounds for a new trial. *See Mack*, 41 M.J. at 55. However, as illuminated by *Warger*, Mil. R. Evid. 606(b) and R.C.M. 923 clearly establish that court member testimony regarding court-martial deliberations cannot be the means by which such nondisclosure is proven, unless one of the exceptions is also met.

We note that after Appellant's trial, the Court established an additional, constitutional exception to the general rule of nondisclosure. In *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017), the Court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." We perceive no reason why this concern would not apply equally to trial by court-martial. However, in this case, there is no trace of "racial stereotypes or animus," much less a "clear statement." Therefore we find no abuse of discretion in light of *Pena-Rodriguez*, although military judges should be cognizant of this new constitutional exception to Mil. R. Evid. 606(b).

In summary, in this case, the military judge's limited inquiry revealed no indication of an exception to Mil. R. Evid. 606(b), and he did not abuse his "wide discretion" by declining to delve further into the court's deliberations. *Lambert*, 55 M.J. at 296.

## B. Legal and Factual Sufficiency

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399

(C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The "reasonable doubt" standard does not require that the evidence be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

As the military judge instructed the court members, Appellant's conviction for abusive sexual contact required the Government to prove the following elements beyond a reasonable doubt: (1) at or near Kadena AB, Japan, on or about 13 December 2012, Appellant committed sexual contact upon SSgt AO by touching her buttocks and breasts; (2) Appellant did so by causing bodily harm to SSgt AO by touching her buttocks and breasts; and (3) Appellant did so without SSgt AO's consent. *See* 10 U.S.C. § 920(d); Department of the Army Pamphlet 27–9, *Military Judges' Benchbook* [*Benchbook*], ¶ 3–45–6 (10 Sep. 2014). "Sexual contact" includes touching the breast or buttocks with an intent to arouse or gratify the sexual desire of any person. *Benchbook*, ¶ 3–45–6.d. The military judge further advised the members that Appellant was not guilty of the offense if at the time he "held, as a result of ignorance or mistake, an incorrect belief that [SSgt AO] consented to the sexual conduct as alleged. The ignorance or mistake must have existed in the mind of [Appellant] and must have been reasonable under all the circumstances.'" Furthermore, "[t]he prosecution has the burden of proving beyond a reasonable doubt that [Appellant] did not reasonably believe that [SSgt AO] consented to the sexual conduct." *See Benchbook*, ¶ 3–45–6, Note 7.1.

SSgt AO provided testimony establishing each of the required elements. She testified that she repeatedly told Appellant "no" and invoked the names of Appellant's girlfriend and her boyfriend. She squeezed Appellant's penis to force him to let go of her. She locked her legs together in an attempt to prevent him from penetrating her vagina with his penis. After all of this occurred, Appellant grabbed SSgt AO's breasts and buttocks as he masturbated over her, without her active participation, until he ejaculated on her stomach.

Additional evidence reinforced SSgt AO's testimony regarding the offense. SSgt JS, SSgt AO's mother KK, MSgt WL, and SSgt MM all confirmed SSgt AO reported the incident to them shortly after it occurred. SSgt JS testified that as they spoke over Skype, SSgt AO displayed both the note Appellant left in her room and a bruise or mark Appellant left on her arm. SSgt AO ceased communication with Appellant, her heretofore close friend. Captain EM, the Kadena AB SARC in December 2012, confirmed she did recall meeting with SSgt AO. In addition, Appellant's response to SSgt AO's lengthy and accusatory text message in May 2013 stated he was "terribly sorry" and had "no excuse," and did not challenge her assertions that his actions were "unwanted" and "degrad[ing]" to SSgt AO, nor the implication that he rather than she was solely responsible for the incident.

Appellant's own testimony supported SSgt AO's account in several respects. His description of his friendship with SSgt AO and the events leading up to the charged sexual assaults is largely consistent with SSgt AO's testimony. With respect to the charged offenses, Appellant agreed that SSgt AO refused his requests for sexual intercourse; that he "groped" her by grabbing her breasts, but she did not "grope" him; that she brought up the name of SSgt JS, her then-boyfriend; that he straddled her, masturbated, and ejaculated on her stomach; that he brought a rag or towel from the bathroom; that she was "very upset" immediately after the incident and fled to the bathroom; and that he left the note she described finding, and then he left her room without attempting to speak with her.

Appellant emphasizes the testimony of several Defense witnesses regarding Appellant's character for truthfulness and/or to SSgt AO's character and/or reputation for untruthfulness. However, none of these witnesses were present in SSgt AO's billeting room when the assault occurred, and Appellant's own bias as a witness in this case is plain. Assuming *arguendo* there was no actual consent, Appellant also points to the "sexual undertones" of his previous interactions with SSgt AO and to her actions on the day of the offense as indicating a reasonable if mistaken belief on his part that she consented to his touching, evidence he contends the Government cannot rebut beyond a reasonable doubt. Appellant made similar arguments at trial, and we do not find they substan-

tially undermine the evidence supporting his conviction. Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence is legally sufficient to support Appellant's conviction beyond a reasonable doubt. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction is therefore both legally and factually sufficient.

## C. Mil. R. Evid. 413

### 1. Additional Background

Without objection from the Defense, the military judge instructed the court members, *inter alia*, as follows with respect to their findings:

> Each offense must stand on its own and you must keep the evidence of each offense separate. Stated differently, if you find or believe that the accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming or proving that he committed any other offense.
>
> . . .
>
> The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense.
>
> . . .
>
> Evidence that the accused committed the Rape alleged in Specifications 1 [digital penetration of the vagina] and 2 [penile penetration of the vagina], and the Abusive Sexual Contact in Specification 4 [forcing SSgt AO's hand onto Appellant's penis] of the Charge may have no bearing on your deliberations in relation to Specification 3 [abusive sexual contact by grabbing the breasts and buttocks] of the Charge unless you first determine by a preponderance of the evidence, that is more likely than not, the offense alleged in Specifications 1, 2 or 4 of the Charge occurred. If you determine by a preponderance of the evidence the offense alleged Specifications 1, 2 or 4 of the Charge occurred, even if you are not convinced beyond a reasonable doubt that the accused is guilty of those offenses, you may nonetheless then consider the evidence of those offenses for their bearing on any matter to which it is relevant in relation to Specification 3 of the Charge. You may also consider the evidence of such other sexual

offenses for their tendency, if any, to show the accused's propensity or predisposition to engage in a sexual offense.[4]

. . .

You may not, however, convict the accused solely because you believe he committed this offense or solely because you believe the accused has a propensity or predisposition to engage in sexual assault. In other words, you cannot use this evidence to overcome a failure of proof in the government's case, if you perceive any to exist. The accused may be convicted of an alleged offense only if the prosecution has proven each element beyond a reasonable doubt.

Each offense must stand on its own and proof of one offense carries no inference that the accused is guilty of any other offense. In other words, proof of one sexual offense creates no inference that the accused is guilty of any other sexual offense. However, it may demonstrate that the accused has a propensity to commit that type of offense. The prosecution's burden of proof to establish the accused's guilt beyond a reasonable doubt remains as to each and every element of each offense charged. Proof of one charged offense carries with it no inference that the accused is guilty of any other charged offense.

In his closing argument on findings, the senior trial counsel did not refer to the preponderance or propensity instructions above, nor did he suggest the court members should conclude from a preponderance of the evidence of the four charged offenses that Appellant had a propensity to commit sexual assaults.

**2. Law**

The meaning and scope of Mil. R. Evid. 413 is a question of law that is reviewed de novo. *Hills*, 75 M.J. at 354. Instructional errors are also reviewed de novo. *Id.* at 357.

Mil. R. Evid. 413(a) provides that in a court-martial where the accused is charged with a sexual offense, evidence that the accused committed other sexual offenses may be admitted and considered on "any matter to which it is relevant." This includes using evidence of sexual assaults to prove the accused

---

[4] The military judge's instructions also included equivalent paragraphs not reproduced here with respect to considering evidence of the other charged specifications in relation to Specifications 1, 2, and 4.

has a propensity to commit sexual assault. *United States v. James*, 63 M.J. 217, 220 (C.A.A.F. 2006).

However, in *Hills*, the CAAF held that evidence of the accused's commission a sexual assault may *not* be used in this way if that alleged sexual assault is charged in the same court-martial and the accused has pleaded not guilty to it. 75 M.J. at 356. The CAAF further held that the instructions accompanying the admission of evidence of charged offenses for Mil. R. Evid. 413 purposes implicate fundamental constitutional due process concerns by undermining an accused's presumption of innocence and the Government's requirement to prove guilt beyond a reasonable doubt. *Id.* at 357. Because "constitutional dimensions are in play," prejudice for such an error must be tested for harmlessness beyond a reasonable doubt. *Id.* In other words, the Government must demonstrate there is no reasonable possibility that the error contributed to the conviction. *Id.*

*United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017), the CAAF clarified that *Hills* is not to be interpreted narrowly. The court stated:

> [T]he use of evidence of charged conduct as M.R.E. 413 propensity evidence for other charged conduct in the same case is error, regardless of the forum, the number of victims, or whether the events are connected. Whether considered by members or a military judge, evidence of a charged and contested offense, of which an accused is presumed innocent, cannot be used as propensity evidence in support of a companion charged offense.

*Id.* at 222. The court reiterated that, where such error exists, the Government must "prove there was no reasonable possibility that the error contributed to [the] verdict." *Id.*

### 3. Analysis

We agree with Appellant that, in light of *Hills* and *Hukill*, the military judge erred in instructing the court members that evidence of the sexual assaults charged in the same case, to which Appellant had pleaded not guilty, could, under a preponderance of the evidence standard, be used to find Appellant had a predisposition or propensity to commit sexual assault and, if relevant, thereby contribute to a finding of guilty. Although the military judge's ruling, as well as the Government's request for the instruction and the Defense's failure to object, are understandable in light of commonly-held understandings of Mil. R. Evid. 413 prior to the CAAF's decision in *Hills*, we must "apply the clear law at the time of appeal, not the time of trial." *United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010) (citation omitted).

Nevertheless, the Government contends that any error in Appellant's case was harmless beyond a reasonable doubt. Under the particular circumstances of this case, we agree.

In this case, all of the charged offenses arose from a single incident involving Appellant and a single victim, SSgt AO. Each of the specifications was based on SSgt AO's account of Appellant's actions between the time he awoke her on the bed in her room at Kadena AB and the time a few minutes later when she told him to leave and locked herself in the bathroom. The acts she described were discrete alleged offenses, but were all part of the same sexual encounter. Such a situation is less suggestive of a predisposition or propensity to commit sexual assault than a case involving multiple alleged victims or multiple incidents over a period of time. In this regard, it is telling that senior trial counsel's argument to the members on findings made no reference to the military judge's Mil. R. Evid. 413 instructions, nor did he argue Appellant had a propensity or predisposition. It is also significant this case did not involve evidence of uncharged, "proper" Mil. R. Evid. 413 evidence that would suggest a predisposition or propensity on Appellant's part. Simply put, notwithstanding the military judge's erroneous instruction, this was a case about a single incident, not about a *propensity* on Appellant's part to commit sexual offenses.

Although it is impossible to know the court members' exact reasoning, the findings in this case also suggest they carefully focused on, as the military judge instructed them, the "prosecution's burden of proof to establish the accused's guilt beyond a reasonable doubt . . . as to each and every element of each offense charged," rather than on any sense that Appellant was more likely to be guilty because of a propensity to commit such offenses. The members acquitted Appellant of three of the four specifications, including all of the acts Appellant specifically denied had occurred at all—the penetration of SSgt AO's vagina by Appellant's fingers and penis, and the placing of her hand on his penis. They convicted Appellant of the act that his own testimony partially confirmed—the touching of her breasts and buttocks. Significantly, according to SSgt AO's testimony, this touching was the last in time of the four alleged offenses, and it occurred in conjunction with Appellant's decision, after SSgt AO's repeated refusals to engage in sexual intercourse, to complete his own sexual gratification on top of her.

Under the particular circumstances of this case, we are satisfied beyond a reasonable doubt that the military judge's erroneous Mil. R. Evid. 413 instructions did not contribute to the verdict.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[5] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court

---

[5] We note an error in the promulgating order with respect to the language of Specification 4 of the Charge, where Appellant's name is misspelled. We direct the publication of a corrected court-martial order to remedy this error.